**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.** **Case No: 6:15-cv-1297-Orl-40GJK**

**LINDA VULEVIC,**

**Defendant.**

---

# ORDER

This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **RENEWED MOTION FOR DEFAULT JUDGMENT (Doc. No. 22)** |
| **FILED:** | **May 27, 2016** |

**THEREON** it is **ORDERED** that the motion is **DENIED**.

## I. FACTUAL BACKGROUND

### A. The Complaint

On August 4, 2015, Plaintiff filed a complaint (the "Complaint") against Defendant seeking to recover money owed to it by Defendant as the result of two unpaid student loans (collectively, the "Loans"). Doc. No. 1. In support of the Complaint, Plaintiff attached two certificates of indebtedness (the "Certificates of Indebtedness") executed by a loan analyst for the United States Department of Education on December 10, 2014. Doc. No. 1-1. According to the Certificates of Indebtedness, on August 9, 1993, Defendant executed two promissory notes (collectively, the

"Promissory Notes") with Citibank to secure the Loans.

On that day, Defendant executed a promissory note to secure a student loan for $6,600.00 (the "First Student Loan"). Doc. No. 1-1 at 1. From September 13, 1993 through December 30, 1993, a total of $2,625.00 was disbursed to Defendant under the First Student Loan. *Id.* The First Student Loan accrues at a rate of 3.13% per annum (or $0.25 per day). Doc. No. 1 at 2; Doc. No. 1-1 at 1. Also on August 9, 1993, Defendant executed another promissory note to secure a student loan for $6,600.00 (the "Second Student Loan"). Doc. No. 1-1 at 2. From September 13, 1993 through December 30, 1993, an additional of $3,975.00 was disbursed under the Second Student Loan. *Id.* The Second Student Loan accrues at a rate of 3.20% per annum (or $0.38 per day). Doc. No. 1 at 2; Doc. No. 1-1 at 2. Both loans were guaranteed by the New York State Higher Education Services Corporation (the "Guarantor"), and then reinsured by the Department of Education under loan guaranty programs allowed under Title IV-B of the Higher Education Act of 1965, as amended, 20 U.S.C. 1071 et seq. (34 C.F.R. Part 682). Doc. No. 22-1 at ¶ 9.

On May 16, 1995, Defendant defaulted on the Second Student Loan. Doc. No. 22-1 at ¶ 10. Due to Defendant's default, Guarantor paid Citibank (the holder of the Note) the amount of $4,356.49. *Id.* The Second Student Loan was assigned to the Department of Education on November 21, 2003 under a reinsurance agreement. Doc. No. 22-1 at ¶ 11. On November 27, 1995, Defendant defaulted on the First Student Loan. Doc. No. 22-1 at ¶ 10. The First Student Loan was assigned to the Department of Education on July 22, 2004 under a reinsurance agreement. Doc. No. 22-1 at ¶ 11.

In the Complaint, Plaintiff alleged that it had demanded payment from Defendant, but Defendant has not paid the indebtedness. Doc. No. 1 at ¶ 5.

**B. The Clerk's Default**

On August 25, 2015, Plaintiff filed a return of service, in which the process server averred that Defendant was served on August 13, 2015. Doc. No. 4. Specifically, the process server averred that she served a true copy of the summons and complaint at the Defendant's usual place of abode on Steffanie Pasquale who resides therein and was over the age of fifteen (15) years old at the time of service. *Id.* On September 9, 2015, Plaintiff moved for an entry for a clerk's default. Doc. No. 6. On September 10, 2015, the Clerk entered default against Defendant. Doc. No. 7.

**C. The First Motion for Default Judgment**

On January 21, 2016, Plaintiff filed a Motion for Entry of Default Judgment (the "Motion for Default"). Doc. No. 17. On April 12, 2016, this Court entered an Order holding an evidentiary hearing, "so Plaintiff may have the opportunity to explain in detail how it calculated the unpaid principal and interest through January 14, 2016." Doc. No. 18 at 2. Furthermore, the Court sought clarification on the "effect(s) of applying the payments and Treasury Offsets […] on calculating the amount owning on each loan. *Id.* On April 19, 2016, Plaintiff filed a Motion to Continue Hearing (the "Motion to Continue"). Doc. No. 20. In the Motion to Continue, Plaintiff requested extra time to gather information regarding its damage calculation. Doc. No. 20 at 2. On April 20, 2016, the Court issued an Order denying the Motion for Default, denying the Motion to Continue, cancelling the evidentiary hearing, and directing the Plaintiff to file a renewed Motion for Entry of Default Judgment. Doc. No. 21 at 3.

**D. The Renewed Motion for Default Judgment**

On May 27, 2016, Plaintiff filed a Renewed Motion for Default Judgment (the "Renewed Motion"). Doc. No. 22. In support of the Renewed Motion, Plaintiff provided certificates of

indebtedness that are purportedly valid through December 9, 2015 (the "Amended Certificates of Indebtedness"). Doc. No. 1 at ¶ 8. Plaintiff also attached a declaration from Christian Odom, a senior loan analyst from the Department of Education, providing further analysis as to how interest was calculated on the First and Second Student Loans (the "Declaration"). Doc. No. 22-1.

In the Renewed Motion, Plaintiff maintains that the allegations in the Complaint and the attachments to the Renewed Motion entitles it to a default judgment against Defendant. Doc. No. 22 at 5-6. Plaintiff alleges that (as of May 24, 2016) Defendant owes a total of $13,693.45, which is represented as follows:

| **Type of Loan** | **Principal** | **Unpaid Interest** | **Total** |
|---|---|---|---|
| **Second Student Loan** | $4,356.49 | $4,025.33 | $8,381.82 |
| **First Student Loan** | $2,870.69 | $2,440.94 | $5,311.63 |
| **Grand Total** | | | $13,693.45 |

Doc. No. 22 at 5. As a result, Plaintiff requests judgment against Defendant in the amount of the outstanding principal and interest as of May 24, 2016 and prejudgment interest on the unpaid principal through the date of judgment. *Id.* at 5-6.

## II. THE STANDARD OF REVIEW

The Federal Rules of Civil Procedure establish a two-step process for obtaining a default judgment. First, when a party against whom a judgment for affirmative relief is sought fails to plead or otherwise defend as provided by the Federal Rules of Civil Procedure, and that fact is made to appear through affidavit or otherwise, the Clerk must enter a default. Fed. R. Civ. P. 55(a). Second, once the Plaintiff obtains a clerk's default the Plaintiff must move for a default judgment. Fed. R. Civ. P. 55(b). Before entering the default judgment, the court must ensure

that it has jurisdiction over the claims and parties, and that the well-pled factual allegation of the complaint (which are assumed to be true) adequately state a claim for which relief may be granted. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[1]

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To this end, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). To state a plausible claim for relief, a plaintiff must go beyond merely pleading the "sheer possibility" of unlawful activity by a defendant and offer "factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). If plaintiff fails to meet this pleading standard, the Plaintiff will not be entitled to a default judgment.

If the plaintiff is entitled to a default judgment, the Court must consider whether the plaintiff is entitled to the relief he or she requests in their motion for default judgment. With respect to a request for damages, plaintiff bears the burden of demonstrating that he or she is entitled to recover the amount of damages sought in their motion for default judgment. *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008). Unlike well-pled factual allegations, allegations regarding the amount of damages are not admitted by virtue of a default. Instead, the court must determine both the amount and the nature of damages. *Id.* (citing *Miller v. Paradise of Port Richey*,

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit entered before September 30, 1981.

*Inc.*, 75 F.Supp.2d 1342, 1346) (M.D. Fla. 1999). Thus, even when a plaintiff moves for a default judgment, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters[.]" *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). *See also*, *Aldolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects a basis for a damages award). Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a liquidated sum or one capable of mathematical calculation, the law requires the district court to hold an evidentiary hearing to determine the amount of damages. *S.E.C. v. Smyth*, 420 F.3D 1225, 1231 (11th Cir. 2005). However, no hearing is needed "when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages." *Id.* at 1232 n. 13. *See also*, *Wallace*, 247 F.R.D. at 681 ("a hearing is not necessary if sufficient evidence is submitted to support the request for damages").

**III. ANALYSIS**

"To recover on a promissory note for a federally-insured student loan, the U.S. Government [must] show: (1) the defendant signed the note; (2) the U.S. Government is the present owner and holder of the note; and (3) the note is in default." *U.S. v. Romero*, 562 F. App'x 943, 948 (11th Cir. 2014) (citing *U.S. v. Petroff-Kline*, 557 F.3d 285, 290 (6th Cir. 2009); *U.S. v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001)).[2] Plaintiff attached the Certificates of Indebtedness to the Complaint. Doc. No. 1-1. In the Certificates of Indebtedness, a loan analyst from the Department of Education attests that Defendant executed the Promissory Notes on August 9, 1993, Plaintiff is the

[2] In the Eleventh Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority. 11th Cir. R. 36-2.

present owner and holder of the Promissory Notes, and the Promissory Notes are in default. Doc. No. 1-1. Accepting these allegations as true, the Court finds that Plaintiff has sufficiently pled a claim to enforce and recover the debt owing on the Promissory Notes.

Despite providing more evidence regarding damages, Plaintiff's request is still problematic. Plaintiff presents the Declaration to provide further evidence regarding damages. Doc. No. 22 at ¶ 4; Doc. No. 22-1. The Declaration, however, contains a number of discrepancies. In paragraph 7 of the Declaration, Odom attests:

> Attached as Exhibits II and III to Plaintiff's Renewed Motion for Default are true and correct copies of the Certificates of Indebtedness as of December 09, 2015. As of 12/09/2015, Linda Vulevic owed $13,584.98. This balance consist [sic] of the loan identified on Certificate of Indebtedness 1 of 2, which shows a principal of $4,356.49, interest (as of 12/09/2015) of 3,957.81 and a daily accrual of interest of $0.40; and Certificate of Indebtedness 2 of 2, which shows a principal of $2,870.69, interest (as of 12/09/15) and a daily accrual of interest of $0.25 [sic].

Doc. No. 22-1 at ¶ 7. Odom attests that attachments two and three of the Renewed Motion are true and correct copies of the Amended Certificates of Indebtedness as of December 9, 2015. *Id.* The Renewed Motion states the same. Doc. No. 22 at ¶ 4. However, after reviewing the attachments, the Court found that the attached exhibits are the same Certificates of Indebtedness attached to the Complaint and are only confirmed through December 10, 2014. Doc. No. 1-1; Doc. No. 22-2; Doc. No. 22-3. Furthermore, it appears that the Declaration confuses the Certificates of Indebtedness. In the Declaration, Odom attests that the principal of Certificate of Indebtedness 1 of 2 is $4,356.49. Doc. No. 22-1 at ¶ 7. However, the Court's review of the attachments shows a balance of $2,870.69. Doc. No. 22-2. In the Declaration, Odom attests that the principal of Certificate of Indebtedness 2 of 2 is $2,870.69. Doc. No. 22-1 at ¶ 7. However, the principal of Certificate of Indebtedness 2 of 2 is $4,356.49. Doc. No. 22-3. Furthermore, the Declaration does not state the

interest of Certificate of Indebtedness 2 of 2. Instead, Odom attests that the balance of Certificate of Indebtedness 2 of 2, "which shows a principal of $2,870.69, interest (as of 12/09/15) and a daily accrual of interest of $0.25 [sic]." Doc. No. 22-1 at ¶ 7. Furthermore, when the Declaration does state an interest calculation, it does not match the attached Certificates of Indebtedness. The Declaration states that the "loan identified in Certificate of Indebtedness 1 of 2" shows "interest of $3,957.81" Doc. No. 22-1 at ¶ 7. However, even assuming that the Declaration switched the Certificates of Indebtedness, the number does not appear in either certificate. Doc. No. 22-2; Doc. No. 22-3. The Renewed Motion contains the same discrepancies. Doc. No. 22 at ¶¶ 4, 8.

As stated, plaintiff bears the burden of demonstrating that he or she is entitled to recover the amount of damages sought in their motion for default judgment. *Wallace,* 247 F.R.D. at 681. The aforementioned errors and discrepancies are obvious, but Plaintiff's actions in this case have been and continues to be plagued with such missteps. As a result, Plaintiff has once again failed to accurately and adequately provide a basis for the Court to quantify damages.

Accordingly, it is hereby **ORDERED** that:

1) The Renewed Motion for Default Judgment is **DENIED;** and
2) On or before December 30, 2016, Plaintiff shall file an Amended Renewed Motion for Default, an affidavit, and proper supporting evidence for its request for damages up to the date of filing the Amended Renewed Motion.

**DONE** and **ORDERED** in Orlando, Florida on November 15, 2016.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties